UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LA VERNE FOSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-04271-JRS-DLP |
| | ) |
| MEGAN J. BRENNAN, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE, | ) ) ) |
| | ) |
| Defendant. | ) |

**Entry Granting Defendant's Motion for Summary Judgment**

*Pro se* Plaintiff La Verne Foster alleges claims for disability discrimination against her former employer, the United States Postal Service, under the Rehabilitation Act, 29 U.S.C. § 791. The Court previously granted Defendant's motion for partial summary judgment, dismissing several claims for failure to exhaust administrative remedies. (Entry, ECF No. 68.) Defendant now moves for summary judgment on Foster's remaining claims. (ECF No. 184.) Foster also moves for summary judgment. (ECF Nos. 189, 193.) For the reasons explained below, Foster's motion (ECF Nos. 189, 193) is **denied**, and Defendant's motion (ECF No. 184) is **granted**.

Various motions ancillary to summary judgment are also pending. Defendant's motion to modify the scheduling order (ECF No. 175) is **denied as moot**; Foster's motion for leave to file excess pages (ECF No. 182) is **granted**; and Foster's motions to submit additional exhibits (ECF No. 196, 197) are **granted**.

## I. Background

Foster began working as a mail processing clerk for Defendant beginning in 1999. Over the years, Foster reported various work-related injuries—carpal and cubital tunnel syndrome, lower back pain, neck pain, and shoulder pain—and received various accommodations, notably reassignments. (Foster Dep. 34:16–35:5, 39:8–40:22, 102:22–106:16, ECF No. 184-1.) Beginning March 31, 2008, Foster was reassigned to monitor first pass automation. (Foster Dep. 48:14–20.) Her duties were to "list on a checklist all the errors that came up on a big screen monitor, and the time, and inform the [electrical technician] regarding the errors," and to "provide daily reports for upper management." (Foster Dep. 49:1–5.) About a year later, on March 9, 2009, the Postal Service deemed that role nonproductive, determined that no necessary and productive work within Foster's restrictions was available, and sent Foster home on workers' compensation for the next four years. (Foster Dep. 49:12–23, 107:1–4.)

In July 2012, the Postal Service sent a letter to Foster's doctor, stating that since Foster "receives full compensation for disability related to a work injury rather than retirement benefits, [she] has an obligation to return to work with or without restrictions when [she] is medically able to do so." (ECF No. 184-9.) On November 30, 2012, Foster's doctor certified that Foster could return to work with the following restrictions: "Return to work with a 5lb weight restriction on both the Right and Left extremity. No repetitive pushing, pulling, grasping or use *above shoulder* with both the Left and Right extremities. Modified case work *below shoulder*. Job appears to be repetitive." (ECF No. 184-10 (emphasis added).) The Postal Service offered Foster

a modified Mail Processing Clerk position that, in keeping with Foster's restrictions, required "sorting letters into mail bins *below shoulders*" and included a five-pound lifting restriction. (Foster Dep. Ex. 5, ECF No. 184-11 (emphasis added).)

Foster accepted the position in writing on December 13, 2012, (*id*), and took voluntary disability retirement on May 22, 2017, (McDermott Decl. ¶ 4, ECF No. 184-6). Foster alleges that, in the intervening years, Defendant subjected her to six instances of disability discrimination at issue in this Entry.

First, Foster alleges that she did not receive premium pay between January 26, 2016 and May 20, 2016. (Pl.'s Br. Supp. Mot. Summ. J. 2, ECF No. 194.) The shortfall was caused by an error in the Postal Service's payroll system and was resolved through a union grievance in May 2016. (Wooten Decl. ¶¶ 5–13, ECF No. 184–17; Foster Dep. 207:23–208:1.) The Postal Service made twelve manual payroll adjustments and corrected the error in the payroll system to ensure correct pay going forward. (Wooten Decl. ¶¶ 11–12.) Foster contends that premium pay for sixteen hours remains unpaid but does not contend that any error was intentional. (Foster Dep. 197:21–198:8.)

Second, Foster alleges that in 2013, her supervisor Abraham Benjamin was not supposed to be supervising her but continually came to her work area to supervise her. (Pl.'s Br. Supp. Mot. Summ. J. 2.) Foster contends that all supervision of her by Benjamin was improper but cites two specific instances. Once, Benjamin "came charging like a bull up to [Foster], was in her face, followed her out to the parking lot, stood outside of her car, and gave her dirty looks." (ECF No. 184-7 at 14.) Another

time, Foster "was near the time clock and [Benjamin] opened each time card box and then beat it closed with his fist . . . while looking at her." (*Id.*)

Third, Foster alleges that on June 30, 2016, and July 8, 2016, she requested FMLA leave but was instead given sick leave. (Pl.'s Br. Supp. Mot. Summ. J. 2.) Fourth, Foster alleges that she was forced to work outside her medical restrictions because the Mail Processing Clerk position required repetitive action. (Foster Dep. 117:16–118:5, 131:8–132:25.) Fifth, Foster alleges that her schedule was changed on August 8, 2016. (Pl.'s Br. Supp. Mot. Summ. J. 2.) During that time, Foster was on extended leave through February 2017. (Wooten Decl. ¶ 20; ECF No. 184-26; ECF No. 193-2 at 13.) And finally, Foster alleges that she reported to work on March 15, 2017, and there was no chair available, so she went home. (Pl.'s Br. Supp. Mot. Summ. J. 2.)

## II. Legal Standard

*A. Summary Judgment*

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the district court "must construe all the facts and reasonable inferences in the light most favorable to the nonmoving party." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017). However, the district court must also view the evidence "through the prism of the substantive evidentiary burden," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986), and does not draw

4

"inferences that are supported by only speculation or conjecture," *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).

To withstand a properly supported motion for summary judgment, Foster "must do more than raise some metaphysical doubt as to the material facts; [s]he must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

*B. Pro Se Filings*

Foster has submitted more than 2000 pages on summary judgment: printouts of blog posts, handwritten notes, correspondence, photographs, stray pages of depositions of unidentified witnesses in unidentified cases, unrelated EEOC decisions, innumerable forms, and the text of New Zealand's Companies Act of 1993. The exhibits' relevance and significance, if any, are not self-evident, and Foster's briefs offer little explanation. "A document filed *pro se* is to be liberally construed[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, a lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001). Nor are courts required to fill the voids in a *pro se* brief by conducting research and crafting arguments on a *pro se* litigant's behalf. *Anderson v. Hardman*,

5

241 F.3d 544, 545 (7th Cir. 2001); *see also Moore v. State Farm Mut. Auto. Ins. Co.*, 775 F. App'x 251, 252 (7th Cir. 2019).

### III. Discussion

In addition to her claims for disability discrimination under the Rehabilitation Act, Foster's operative complaint also alleges claims for sex discrimination under Title VII, (Am. Compl. ¶¶ 159–67, ECF No. 41), for retaliation under the Rehabilitation Act and Title VII, (*id.* ¶¶ 168–172), for unpaid wages under the FLSA and state law, (*id.* ¶¶ 173–77), for breach of contract, (*id.* ¶¶ 178–85), for FMLA violations, (*id.* ¶¶ 186–92), and for FMLA retaliation, (*id.* ¶¶ 193–97). To the extent any of those additional claims survived partial summary judgment, Foster has forfeited them. Defendant cites Foster's deposition testimony that her disability discrimination claims were the only remaining claims she was pursuing, (Def.'s Br. 3, ECF No. 185), and Foster offers no argument in opposition. *See Lekas v. Briley*, 405 F.3d 602, 614–15 (7th Cir. 2005) (holding that the plaintiff, who proceeded *pro se* in district court, waived certain claims by failing to respond to arguments for dismissal).

The Rehabilitation Act provides that no "qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination . . . by the United States Postal Service." 29 U.S.C. § 794(a). "The discrimination provisions may be invoked only by one who is a 'qualified individual with a disability,' that is, someone who can perform the essential functions of his job with or without a reasonable accommodation." *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999).

6

Defendant argues that Foster cannot invoke the discrimination provisions because she is not a qualified individual with a disability: Foster unequivocally testified that she could not perform any of the duties of her mail processing clerk position. (Foster Dep. 94:1–95:16, 117:13–118:5, 119:17–25.) Foster's response, construed liberally, is threefold. First, Foster disavows her deposition testimony because she "was in pain at all times during the [d]eposition and had to stop the [d]eposition because the Representative was twisting [Foster's words]." (Pl.'s Br. Resp. 4, ECF No. 195.) Second, Foster cites evidence that she did, in fact, perform the duties of her position (*i.e.*, casing mail). (*Id.* at 4–5 (citing Benjamin Dep. 57:20–25, ECF No. 193-4 at 255.)) And third, Foster appears to argue that she was denied the reasonable accommodation of reassignment to a position within her restrictions, and that she can perform the duties of a safety captain, "Nixies Clerk," and "Return to Sender clerk." (*Id.* at 5.) These arguments do not preclude summary judgment.

First, Foster cannot disavow her deposition testimony. At her deposition, Foster specifically testified that she was not on any medication that would affect her ability to testify, that there was nothing else that would affect her ability to testify, and that there was no other reason that would "make this a bad day for a deposition." (Foster Dep. 6:23–7:14.) Indeed, Foster testified that she did not take medication that day specifically to avoid deleterious effects on her ability to testify. (Foster Dep. 168:7–11.) Moreover, Foster was advised at the deposition to notify counsel if she did not understand a question, (Foster Dep. 6:6–11), and Foster did not request any clarification in the portions of her testimony at issue. In her brief, Foster does not identify

7

any specific, confusing questions, and nothing in the transcript suggests that Foster was confused. (*See id.* at 94:1–22.) *See Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104–05 (7th Cir. 1985). To the contrary, Foster elaborated with details consistent with her testimony that she could not perform the duties of mail processing clerk with her medical restrictions. To allow Foster to disavow her testimony under these circumstances would thwart the purposes of summary judgment. *See Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996).

Second, other employees' testimony that they observed Foster performing the duties of mail processing clerk does not controvert Foster's testimony that she could not perform those duties safely. Indeed, the core of Foster's failure-to-accommodate claim, even in her summary judgment submissions, is that her job duties exceeded her restrictions, causing her pain: "I was forced/coerced into working a job that placed me in harm's way for nearly five years." (Pl.'s Reply 8, ECF No. 199; *id.* at 16 ("Plaintiff could always perform the essential function of her position, however the position placed Plaintiff in harm's way, resulting in new [p]ermanent and additional injuries"); Pl.'s Resp. 12, ECF No. 195 ("Plaintiff has provided the testimony of Abraham Benjamin, Darlene Morales, Keith Duncan, and Vince Wolf[;] they all stated that she was able to case mail. Plaintiff was in excruciating pain").) An individual is not qualified if she cannot *safely* perform the essential duties of the position with or without a reasonable accommodation. *See Peters v. City of Mauston*, 311 F.3d 835, 846 (7th Cir. 2002) ("While the law gives the disabled employee the right to perform the job without a reasonable accommodation, the City determined that Peters could not

8

safely perform the tasks assigned to an Operator because of his permanent, physician-imposed lifting restrictions."); *Koshinski v. Decatur Foundry, Inc.*, 177 F.3d 599, 603 (7th Cir. 1999) ("Based on this evidence, the district court correctly concluded that Koshinski could not perform the essential functions of his job. Koshinski may have shown that he wanted to return to work despite the risk of pain and harm, but that is not the test. He had to show that he was qualified to do the job. And neither he nor his doctors thought he was.").

"It is clear that a worker who cannot do the job even with a reasonable accommodation has no claim under the [Rehabilitation Act]. . . . This is true even if the employees' inability to perform the job is due entirely to a disability." *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (citations and quotation marks omitted). And yet, Foster's Rehabilitation Act claims might survive if there were a reasonable accommodation that would enable her to perform the essential duties of her position. Foster's third argument is that she was denied the reasonable accommodation of reassignment to another position. Reassignment may be a reasonable accommodation, but only if there is a vacant position for which the plaintiff qualifies. It is the plaintiff's burden to show that such a position exists. *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001). "An employer need not create a new job or strip a current job of its principal duties to accommodate a disabled employee." *Gratzl v. Office of Chief Judges of 12th, 18th, 19th & 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010). "If such a position is available, then the court may consider whether failure to provide that accommodation was due to a breakdown in the interactive process." *Jackson v.*

9

*City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005); *see also Dargis v. Sheahan*, 526 F.3d 981, 987–88 (7th Cir. 2008) ("even if the Sheriff's Office did assign some officers to positions where they were able to avoid inmate contact completely, Dargis's testimony does not show that such a position was available when he sought reinstatement").

Foster identifies three positions she could fill with her restrictions: safety captain, nixies clerk, and return to sender clerk. But Foster's citations to the record, even setting aside any evidentiary objections, do not tend to show that any of her preferred positions were available, or even existed, between 2012 and 2017. Most of the exhibits cited in Foster's response brief have no apparent connection to the existence or availability of any of these positions. (*See* Pl.'s Br. Resp. 3, ECF No. 195; ECF No. 193-1.) The Court has identified some exhibits submitted by Foster that appear relevant (though not admissible), but even those documents do not support the inference that positions were available—or were bona fide positions—during the relevant time. For example, the record contains a "Postal Times" article, dated March 2, 2018 (after the relevant time period in this case), stating "USPS recruiting *volunteer* safety ambassadors." (ECF No. 199-3 at 5 (emphasis added).) And Foster's reply brief cites three blog posts, (ECF Nos. 199-32, 199-33, 199-34), all of which are hearsay, and none of which tend to show that the positions existed and were available. Likewise, Foster's unsworn assertion in her reply brief that she "spoke with the nixies clerk and return to sender clerks frequently," (Pl.'s Br. Reply 10), is not evidence that those assignments were standalone positions or that there were any vacancies.

10

To the contrary, the uncontroverted evidence (though Foster asserts repeatedly in her briefs that she disputes the evidence, she presents no countervailing evidence) shows that safety captain is a volunteer role performed in addition to regularly assigned duties, (Parrish Decl. ¶ 5), and that return to sender clerk and nixies clerk are not standalone positions, (*id.* ¶ 6). The Postal Service was not required to transform those ancillary duties into standalone positions to accommodate Foster's disability. *See Gratzl*, 601 F.3d at 680. And even if they were standalone positions, Foster presents no evidence of any vacancy during the relevant time period.

Accordingly, on this record, no reasonable factfinder could conclude that Foster was able to perform the essential duties of her position with or without a reasonable accommodation, and Defendant is entitled to summary on Foster's Rehabilitation Act claims. Moreover, even if Foster could establish that she was a qualified individual with a disability, Defendant would nevertheless be entitled to summary judgment on each of Foster's claims because the designated evidence would not permit a reasonable factfinder to conclude that Foster's disability caused an adverse employment action. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Although, as previously discussed, Foster forfeited her additional claims, her submissions do discuss sexual harassment in connection with her supervision claim. Even setting aside any forfeiture, summary judgment on Foster's supervision claims would be warranted. Foster does not cite evidence tending to show harassment— whether based on disability, sex, or any other protected characteristic or activity— "so severe or pervasive as to alter the conditions as employment and create an abusive

working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). Indeed, Foster's briefs do not identify any specific conduct at all, complaining instead of the Postal Service's failure to investigate or discipline her supervisor for unspecified sexual harassment allegations Foster made in 2004. (Pl.'s Br. Resp. 7–8; Pl.'s Br. Reply 12.)

In harassment cases, the Seventh Circuit considers "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance. Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840–41 (7th Cir. 2009) (citations omitted). Moreover, federal law "does not guarantee a utopian workplace, or even a pleasant one. If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated." *Vore v. Ind. Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994).

The harassment allegations at issue in Foster's underlying administrative complaints are (1) the fact that Abraham Benjamin supervised her at all; (2) that Benjamin once "came charging like a bull up to [Foster], was in her face, followed her out to the parking lot, stood outside of her car, and gave her dirty looks," (ECF No. 184-7 at 14); and (3) that Foster once "was near the time clock and [Benjamin] opened each time card box and then beat it closed with his fist . . . while looking at her," (*id.*). Defendant is entitled to summary judgment because (1) these instances do not rise to

12

the level of conduct that alters the terms and conditions of employment and (2) Foster cites no evidence tending to show that the behavior was based on any protected characteristic. To the extent Foster contends that the harassment was retaliation for her previous allegations, without additional evidence, the nine-year gap between Foster's 2004 sexual harassment complaint and the alleged harassment in 2013 undermines any inference of retaliation. *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 698 (7th Cir. 2017) (holding that six-month gap between protected activity and adverse action "substantially weaken[ed]" retaliation claim).

## Conclusion

For the reasons set forth above, Foster's motion for summary judgment (ECF Nos. 189, 193) is **denied**, Defendant's motion for summary judgment (ECF No. 184) is **granted**, and Foster's claims are **dismissed** on the merits with prejudice. Final judgment will be entered separately.

**SO ORDERED.**

Date: 2/18/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LA VERNE FOSTER
5305 Cotton Bay Drive West
Indianapolis, IN 46254-4520

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov